BRANTLEY, J.,
for the court.
¶ 1. Edward D. Ward was convicted by a jury of the Bolivar County Circuit Court of rape, sexual battery and burglary of a dwelling. Aggrieved, he appeals, arguing that the circuit court erred in allowing certain testimony, that the verdicts were against the overwhelming weight of the evidence, and that he received ineffective assistance of counsel. Finding no merit to the assignments of error, we affirm his conviction and the sentence imposed by the court below.
FACTS
1f 2. On June 24, 2000, at approximately 2:00 a.m., Brenda Brown was at home with Jamel Brown, Timothy Johnson and Letha Hall playing cards. They heard a lady screaming outside the home. Ms. Brown went outside to find her 104 year-old female neighbor standing at her mailbox screaming for help. Mr. Brown and Johnson brought the lady, who was wearing a gown and acting nervous, scared and agitated, to Ms. Brown’s house. Hall went inside and called the police.
¶ 3. The 104 year-old lady refused to come inside, so she was given a chair to sit in outside of Ms. Brown’s house. She jumped and screamed whenever one of the males would approach her. The 104 year- . old lady told Mr. Brown that she had been raped by a man wearing a white t-shirt and dark pants and that the perpetrator had torn the phone from the wall so she could not call anyone. Mr. Brown testified that the 104 year-old victim appeared scared, hysterical and upset.
¶ 4. Cleveland Police Officer Charles White responded to the emergency call and came to Ms. Brown’s house to find the 104 year-old victim sitting outside. As he approached the victim, she almost jumped out of the chair, acting nervous. After checking the victim’s home, Officer White tried to talk to the victim. She said that she had been raped. Officer White then called for an ambulance and investigator to respond to the scene. Officer White followed the ambulance to the hospital. At the hospital a victim’s rape kit was done. She again told Officer White that she had been raped and gave the officer a description of her attacker. Officer “White testified that he had seen someone matching that description at a store before beginning work that night. Officer White identified that person as Edward D. Ward and reported that information to Investigator *897 George Serio who had been called to the victim’s home earlier to investigate.
¶ 5. Investigator Serio testified that he and another officer entered the home of the victim. In the living room they found a hospital bed where the victim slept due to her age. Investigator Serio found two black hairs on the bed. He retrieved the hairs and sealed them in an envelope to be sent to the crime lab. Joe Andrews from the Mississippi Crime Lab testified that the black hairs found in the bed had the same microscopic characteristics as the defendant’s hair. While in the home, the officers found that the telephone had been pulled out of the wall. They also collected the phone to dust for fingerprints, but none were found.
¶ 6. Later in the afternoon, Investigator Serio received information about Ward trying to sell a box of dishes in a black bag to Russell Sanders. Sanders testified that Ward had tried to sell him and his wife some dishes in the early morning hours' of June 24. However, they refused to buy them. Later in the morning, Sanders went outside after hearing a noise. He found the bag with the box of dishes by his garbage which he took to Deputy Sheriff Gerald Rainey. Deputy Rainey then contacted Investigator Serio. In addition, Robert Cozee, Jr. and Debra Patterson testified that around 2:00 or 2:30 in the early morning hours of June 24, Ward attempted to sell them the same dishes in a black bag, but they had also refused to buy them.
¶ 7. Investigator Serio had the dishes dusted for finger prints, gathering twenty-three latent lift cards on which the crime lab found sixty-two prints of which fifty-one matched the known prints of Ward. Additionally, Serio found that dishes from the china cabinet in the victim’s home matched the pattern of the dishes that Sanders turned over to the police. Serio then showed a photographic lineup to the victim, who identified Ward as her attacker. Ward was later arrested, indicted and brought to trial for rape, sexual assault and burglary of a dwelling.
¶ 8. During the trial, the 104 year-old victim testified that the defendant had come to her home on two prior occasions. The first occasion was during a family gathering when he identified himself as “Big June” or “Big June’s son”. He stated that he was looking for work, but the victim told him that she did not have any work for him to do. Willard Dixon, a nephew of the victim, testified that approximately ten days prior to the crime, he had seen Ward at the victim’s house seeking work. Additionally, Barbara Hardy, a niece of the victim, testified that she had also seen Ward at the victim’s home within two weeks of the crime.
¶ 9. On the second occasion, the victim stated that Ward took one hundred dollars out of one hundred twenty that Ward had seen a family member give to her. She also stated that he took other items from her home.
¶ 10. The third occasion that he entered her home was on June 24, 2000, after she had locked the doors and had gotten ready for bed. She stated that Ward broke into her home and came up behind her in the kitchen. She testified that he wanted some money and that she was frightened. Ward pushed the victim onto her bed and entered her vaginally and orally, in addition to performing oral sex on her while she begged him to stop. After raping and assaulting her, Ward took some dishes from her china cabinet, the twenty dollars remaining from the $120 mentioned above, ripped out the phone and left.
¶ 11. After her attacker left, she ran outside screaming which is when her neighbor heard her. She was taken to the *898 hospital where a sexual assault kit was done. As part of the paper work the section dealing with the relationship of the assailant to the victim was marked “stranger.” However, there was a notation that the assailant had been at her house three times. At trial, the 104 year-old victim identified her assailant as Ward through a photographic line up and physically in the courtroom.
¶ 12. The jury found Ward guilty on all three counts. Aggrieved, Ward appeals, arguing that the trial court erred in allowing Mr. Brown to testify as to what the victim said and in allowing Dixon and Hardy to testify as to prior acts of Ward. Ward also argues that the court erred in denying his motion for a directed verdict because the verdict was against the overwhelming weight of the evidence. Additionally, Ward submitted a pro se brief, arguing that he had received ineffective assistance of counsel.
DISCUSSION OF THE ISSUES
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING BROWN TO TESTIFY AS TO THE STATEMENTS MADE BY THE VICTIM.
¶ 13. Ward argues that the statements made by the victim to Mr. Brown were improperly admitted as excited utterances under such exception to the rule against hearsay. Ultimately, Ward contends that the prosecution failed to lay the proper foundation and that there was an intervening factor between the attack and the statement by the victim.
¶ 14. The admittance of evidence is within the discretion of the trial judge. Davis v. State, 611 So.2d 906, 914 (Miss.1992). Hearsay statements are not admissible as evidence. M.R.E. 802. However, when the statement is made “while the declarant was under the stress of excitement caused by the event or condition,” then the statement is admissible as an excited utterance. M.R.E. 803(2).
¶ 15. During the trial, Mr. Brown testified that before the police arrived, the victim told him that she was raped. Ward objected, arguing that the statement was hearsay. However, the judge found the statement to be an excited utterance and allowed the testimony. Mr. Brown testified that the victim was scared, hysterical and upset at the time she stated that she had been raped.
¶ 16. Ward argues that Mr. Brown testified that the victim was also scared of him. For that reason, Ward contends that the fear of Brown and the unknown length of time were intervening factors between the attack and the statement. As stated above, the admissibility of evidence is within the discretion of the trial judge. Davis, 611 So.2d at 914. Specifically, there is no rule as to the length of time that must pass between the event and the statement. Baine v. State, 606 So.2d 1076, 1079 (Miss.1992). As there is sufficient testimony to show that the victim was upset and hysterical when Brown and the others approached her prior to her making the statement, we cannot find that the trial judge abused his discretion in admitting the statement.
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING TESTIMONY OF PRIOR ACTS.
¶ 17. Ward’s second assignment of error is that the trial judge improperly allowed the testimony of prior acts. Dixon and Hardy testified that they had seen Ward at the victim’s home approximately ten days prior to the attack. This is the testimony that Ward now objects to on the basis that it is inadmissible as a prior bad act. However, Ward failed to make this objection during the trial. Failing to con *899 temporaneously object to testimony, waives any error on appeal. Berry v. State, 703 So.2d 269, 277 (Miss.1997). Therefore, this issue is procedurally barred.
¶ 18. More importantly, under Mississippi Rule of Evidence 403(b) prior crimes, wrongs or acts are not admissible to show conformity with the crime charged. M.R.E. 403(b). In this case, no prior bad acts were admitted. Dixon and Hardy only testified that they had seen Ward at the victim’s home which is not evidence of a previous act, either good or bad.
III. WHETHER THE VERDICTS WERE AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 19. Ward also argues that the verdicts were against the overwhelming weight of the evidence. Specifically, he contends that the prosecution failed to prove that Ward was the perpetrator of the rape and sexual assault and failed to prove breaking and entering as to the burglary charge. Our obligation, when assessing the sufficiency of the evidence, is to view all of the evidence in the light most favorable to upholding the verdict. Taylor v. State, 733 So.2d 251, 256 (¶26) (Miss.1999).
¶ 20. As to the identity of the attacker, the victim identified Ward as the man who broke into her home, raped and sexually assaulted her. Under Mississippi law, the unsupported testimony of the victim of a sexual assault is sufficient to uphold a guilty verdict, especially where the other evidence does not contradict her testimony. Cross v. State, 759 So.2d 354, 356 (¶ 11) (Miss.1999). Here, the victim identified Ward as her attacker, Ward’s fingerprints were found on the dishes stolen from her home and the hair found in the victim’s bed had the same microscopic characteristics as known samples collected from Ward. The evidence more than supports that Ward raped and sexually assaulted the 104 year-old victim.
¶21. Ward also argues that the prosecution failed to prove the burglary elements of breaking and entering. The State’s evidence presented at trial along with all reasonable inferences support the verdict. The victim testified that she had secured the doors earlier and had went to the kitchen to get a snack when the defendant appeared behind her. She stated that she did not let him in and that her lock was still broken. Whether Ward actually broke the lock or door is of no consequence. Any effort, however slight, such as the turning of a door knob to enter, constitutes a breaking, ... without the permission of the inhabitant. Alford v. State, 656 So.2d 1186, 1190 (Miss.1995). Therefore, the evidence supports the guilty verdicts.
IV. WHETHER WARD RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 22. Ward argues that his trial counsel was ineffective thereby depriving him of his right to effective assistance of counsel. He alleges that he received ineffective assistance of counsel in that his counsel failed to investigate prior to trial, failed to assist in presenting actual crime lab findings, failed to confer with defendant more than twice prior to trial, failed to subpoena witnesses, failed to develop defense strategy, failed to object during trial, and failed to allow defendant to view briefs and or papers pertaining to appeal.
¶ 23. In order to prevail on the issue of ineffective assistance of counsel, Ward has the burden of proof to show (1) that the performance of counsel was deficient and (2) that the defendant was *900 prejudiced by counsel’s deficient performance. Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). His counsel’s conduct is presumed to have been effective; however, that presumption may be rebutted. Moody v. State, 644 So.2d 451, 456 (Miss.1994) (citations omitted). Therefore, our review of his counsel’s performance is deferential. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Additionally, the performance is judged by looking at the totality of the circumstances. Gilley v. State, 748 So.2d 128, 129 (¶ 20) (Miss.1999).
¶ 24. Ward charges that his counsel failed to investigate and confer with him more than twice prior to trial. The Mississippi Supreme Court has held that “complaints of ineffective assistance of counsel, because [an] attorney failed to make pretrial investigation and to spend more time with [client], are insufficient as a matter of law.” Harveston v. State, 597 So.2d 641, 642 (Miss.1992). Ward also finds deficiency in that his attorney failed to subpoena witnesses, failed to assist him in presenting the actual crime lab findings and failed to object during trial. The record reflects that the defense counsel subpoenaed witnesses, objected throughout the trial and vigorously cross-examined the expert witnesses from the crime lab, requiring the experts to further explain their findings. Additionally, the certificate of service shows service of the brief and record excerpts to Ward. As to a counsel’s trial strategy, this Court will not second guess counsel’s trial strategy'. Marshall v. State, 759 So.2d 511(¶ 9) (Miss.Ct.App. 2000). Looking at the totality of circumstances, we find that the counsel’s performance was effective.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF COUNT I BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS; COUNT II RAPE AND SENTENCE OF LIFE IMPRISONMENT; AND COUNT III SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS, WITH SENTENCES TO RUN CONSECUTIVELY TO EACH OTHER AND TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.