844 So.2d 470 (2002)
Warren Chevelle EVANS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01673-COA.
Court of Appeals of Mississippi.
August 27, 2002.
Rehearing Denied November 12, 2002.
Certiorari Denied May 1, 2003.
*473 Thomas Quitman Brame, Jr., Bay Springs, for appellant.
Office of the Attorney General by Billy L. Gore, for appellee.
Before KING, P.J., LEE, and IRVING, JJ.
KING, P.J., for the Court.
¶ 1. Warren Chevelle Evans was found guilty in the Circuit Court of Newton County, Mississippi of the murder of Rita Lena Fielder. He was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Evans has appealed and raised the following issues, which we quote verbatim:
I. The honorable court erred in allowing the State to use expert witnesses not disclosed in discovery, and erred in not granting defendant's timely motion for continuance thereon.
II. The court erred in failing to grant defendant's requested manslaughter instruction.
III. The honorable circuit court erred in admitting defendant's "confession" into evidence.
IV. The trial court erred in requiring the defendant to be present and sit at counsel table during the trial process.
V. The trial court erred in failing to continue the trial on the absence of Doctor Donald Guild, an important defense witness.
VI. The lower court erred in failing to grant defendant's motion for new trial; and additionally in failing to grant defendant's motion for mistrial near the conclusion of the trial.

FACTS
¶ 2. On December 31, 1998, around midnight, Evans knocked on the door of his aunt Rita Fielder's home in Hickory, Mississippi. Evans' cousin, Michael Thomas, let him in and Thomas went to sleep on the sofa. Shortly thereafter, Rita Fielder was killed and Evans left the Fielder home.
¶ 3. On December 31, between 12:30 and 12:45 a.m., Evans walked into the Newton Police Department and told the dispatcher that he had killed his aunt Rita by cutting her. The dispatcher then called Assistant Chief of Police Melvin Evans (no relation to the defendant), who talked with Evans. In the dispatcher's presence, Evans gave the assistant chief a knife which was later determined to be the weapon used to stab Ms. Fielder. The police chief of Hickory, J.C. Wash, was contacted by the Newton Police Department. Officer Wash arrived at the Fielder home where he discovered Ms. Fielder's body with a pillow over her head. Officer Wash then called the Newton Police Department back and asked them to hold Evans.
¶ 4. At approximately 1:55 a.m. prior to conducting an interview with Evans, the sheriff of Newton County, Jackie Knight, advised Evans of his constitutional rights. After reading the rights form to Evans in the presence of Assistant Chief Melvin Evans and Chief of Police Harvey Curry of the Newton Police Department, Evans acknowledged that he understood those rights and signed the waiver of rights form. After Evans signed the form, he told Sheriff Knight what happened regarding his aunt. At approximately 2:02 a.m., Sheriff Knight wrote a statement based upon the information supplied by Evans. After the information was written down, *474 the sheriff read it back to Evans to give him an opportunity to make any changes. There were no changes made to the statement which Evans then signed confessing to the stabbing of his aunt.
¶ 5. On June 17, 1999, pre-trial motions were heard regarding whether Evans was competent to stand trial. On July 12, 1999, the trial judge executed an order for mental evaluation and treatment for Evans at the Mississippi State Hospital. On December 14, 1999, Evans was admitted to Forensic Services at the Mississippi State Hospital in Whitfield, Mississippi for treatment, with the goal of restoration to competence to stand trial on a charge of murder.
¶ 6. On June 29, 2000, Dr. Reb McMichael, Director of Forensic Services, notified the court that Evans was competent to stand trial, stating:
We now are unanimous in our opinion that Mr. Evans has the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding in the preparation of his defense, and that he has a rational as well as factual understanding of the nature and object of the legal proceedings against him.
¶ 7. A jury trial was conducted on August 7-9, 2000. Evans was convicted of murder and sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections.
¶ 8. On August 29, 2000, the court heard Evans' motion for a new trial. That motion was denied.

ISSUES AND ANALYSIS

I.
Did the trial court err in allowing the State to use expert witnesses not disclosed in discovery, and err in not granting defendant's timely motion for continuance thereon?

STANDARD OF REVIEW
¶ 9. The applicable standard of review regarding the admissibility of evidence is as follows:
Admissibility of evidence rests within the discretion of the trial court. However, this Court must also determine whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility. If in fact the trial court has incorrectly perceived the applicable legal standard in its fact findings, the Court applies a substantially broader standard of review. However, a denial of a substantial right of the defendant must have been affected by the court's evidentiary ruling. Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.
Hayes v. State, 803 So.2d 473 (¶ 4) (Miss. Ct.App.2001) (citations omitted).
¶ 10. Evans contends that the trial court erred by allowing the State to use expert witnesses not disclosed in discovery. He maintains that the State put forth the testimony of two expert witnesses, Dr. Charles Harris and Dr. Reb McMichael, over his objection. Evans claims that he was not informed that the State would call these witnesses, although the State was aware of his intent to offer an insanity defense. Evans maintains that he first learned of these two witnesses and that they would testify on the issue of whether he was sane according to the M'Naghten test at the time the crime was committed on the morning of trial.
*475 ¶ 11. This Court is limited on appeal to reversing a trial court's decision regarding discovery violations only upon finding an abuse of discretion. Gray v. State, 799 So.2d 53(¶ 26) (Miss.2001).
¶ 12. Based on Evans' contention that he was not given the names of the two witnesses, the trial judge, consistent with URCCC rule 9.04(I),[1] allowed Evans' attorney to interview the doctors prior to their giving any testimony. After an interview with these witnesses, Evans indicated that he did not waive any possible discovery violation.
¶ 13. Evans maintains that it was error to deny his motion for continuance which was predicated upon the alleged discovery violations. However, he offers no specific examples of prejudice caused by this supposed discovery violation.
¶ 14. The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in a manifest injustice. Coleman v. State, 697 So.2d 777, 780 (Miss.1997). In addressing the motion for continuance, the trial court stated:
When a Defendant says that he's not been furnished something in discovery, the Court can grant the continuance, which is what you're asking, Mr. Brame, or the Court can allow you to have a conference with the witnesses, which is what I did, or the Court, if it finally feels there's prejudice, the Court can preclude the State from even using that evidence.
I granted you that continuance yesterday, and here we are on the following day, and for that additional reason, the Court feels like there has been ample time, if there was surprise, to talk to those witnesses.... So your motion for a continuance is overruled.
¶ 15. In its brief, the State contends that there was no unfair surprise because Evans "could have reasonably expected the State to produce medical experts, as opposed to lay witnesses, to refute an insanity defense." The State maintains that Evans was given a reasonable opportunity to interview the two experts.
¶ 16. Evans received the reports from these witnesses. Therefore, he had access to the information regarding their potential *476 testimony. The trial judge allowed Evans time to question these witnesses prior to the witnesses taking the stand. Evans was aware that this medical evidence existed, and was relevant to his defense of insanity. We find that Evans was not unfairly surprised by the possibility of these witnesses testifying and affirm the trial court's decision on this issue.

II.
Did the trial court err in failing to grant defendant's requested manslaughter instruction?
¶ 17. Evans contends that the trial court erred in failing to grant his requested manslaughter instruction D-18.[2] He suggests that Mississippi Code Annotated Section 97-3-35 (Rev.2000), the manslaughter statute, should be read disjunctively so that "any killing without malice, or [by the use of a deadly weapon], without authority of law, and not in self-defense can be deemed manslaughter."
¶ 18. Under Evans' analysis, the mere fact that the killing was done with a deadly weapon, a knife, would place it within the scope of the manslaughter statute.
¶ 19. However, what Evans fails to consider is that it can only be considered as manslaughter when done in the "heat of passion." Turner v. State, 773 So.2d 952(¶ 5) (Miss.Ct.App.2000). The phrase "heat of passion" suggests a "state of violent and uncontrollable rage" caused by some immediate provocation from the victim. Id. In this case, there is no evidence of any provocation by the victim Ms. Fielder, who was slain while asleep in her bed.
¶ 20. Jury instructions are not given unless there is an evidentiary basis in the record for such. Terry v. State, 718 So.2d 1115(¶ 48) (Miss.1998). There does not appear to have been an evidentiary basis in the record to have warranted a manslaughter instruction.

III.
Did the trial court err in admitting defendant's "confession" into evidence?
¶ 21. Evans contends that the trial court erred in admitting his confession in evidence. He maintains that the State must prove beyond a reasonable doubt that he knowingly, intelligently and voluntarily waived his Miranda rights before giving his confession. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). A suppression hearing regarding the admissibility of the confession was held outside the presence of the jury. The standard of review previously noted in issue I applies to this issue as well.
¶ 22. The trial judge ruled:
Having looked at all those facts, and having balanced the Defendant's offering of testimony through the report of *477 Dr. Owen and the officers, the Court finds, under the totality of the circumstances, that there was no coercion, there was no pressure, no force exerted against the Defendant on the night of December 31st. It appears that there was no promise of reward as far as leniency; that there was no inducement given to him to make the statement; and, strangely, notwithstanding the senselessness of the crime, the illogicalness of the whole thing, yet, the Court, in applying the McNaughton [sic] standard, it appears from all the attendant facts that the statement that he made had a legally sufficient degree of rationalness so that his confession, in evaluating it thoroughly under the test of Miranda, is freely given, voluntarily given, knowingly given, and intelligently made. Therefore, the Court finds that the motion to suppress the confession is overruled, and it will be admitted.
¶ 23. The record reflects that Evans went to the Newton police station of his own volition and immediately informed them that he had killed his aunt. This spontaneous and unsolicited confession was admissible and provided a sufficient basis upon which to convict Evans.
¶ 24. Because we find Evans' unsolicited statement to have been admissible and sufficient to sustain a conviction for murder, the issue of the second confession is moot. While holding the issue to be moot, this Court is nevertheless concerned about the circumstances which surround this second confession.
¶ 25. The record reflects that those parties taking the second confession were aware that Evans had severe mental problems, and that shortly before this incident, his family had attempted to have him committed for treatment. Because there was knowledge of Evans' mental problems, those persons seeking to solicit a confession from him were under a heightened duty to explain and determine whether Evans understood his Miranda rights.
¶ 26. This heightened duty could not be filled by merely reading the standard card and ending with the standard question, "Do you understand these rights?"

IV.
Did the trial court err in requiring the defendant to be present and sit at counsel table during the trial process?
¶ 27. Evans contends that the trial court erred in requiring him to be present and sit at counsel table during trial. He asserts that pursuant to Mississippi Code Annotated Section 99-17-9 (Rev. 2000), his request to be absent from the proceedings should have been granted. Evans maintains that because his mental condition had greatly improved due to the months of treatment at the state hospital in Whitfield, his defense was prejudiced by his appearance as a more "normal" person at trial. Evans claims that the trial court abused its discretion by requiring him to be present during trial which amounted to giving silent evidence against him.
¶ 28. Mississippi Code Annotated Section 99-17-9 (Rev.2000), upon which Evans raises this claim provides:
In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto. If the defendant, in cases less than felony, be on recognizance or bail or have been arrested and escaped, or have been notified by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or be in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment final and sentence *478 be awarded as though such defendant were personally present in court.
¶ 29. The statute clearly places within the trial court's discretion the determination to grant or deny the defendant's request to be excused from the courtroom during trial. Where such discretion is exercised, this Court must of necessity review its exercise upon an abuse of discretion standard. Hardiman v. State, 776 So.2d 723(¶ 19) (Miss.Ct.App. 2000). That standard requires that defendant affirmatively show significant prejudice accrued to him as a result of the trial court's actions. Wilson v. State, 755 So.2d 2(¶ 12) (Miss.Ct.App.1999).
¶ 30. Having reviewed the record, we find that the trial court did not abuse its discretion in requiring Evans to be present at trial nor did the defendant establish that he was prejudiced.

V.
Did the trial court err in failing to continue the trial in the absence of Doctor Donald Guild, an important defense witness?
¶ 31. Evans contends that the trial court erred in failing to continue the trial to another day due to the absence of Dr. Donald Guild, an important defense witness. Evans maintains that his attorney learned a few days before trial that a key witness, Dr. Guild, was not in the United States and therefore not available for subpoena. Because of Dr. Guild's absence, Evans offered an ore tenus motion for continuance.
¶ 32. Continuances in criminal cases are governed by Mississippi Code Annotated Section 99-15-29 (Rev.2000), and require that the movant (1) set forth the facts to be offered by the absent witness, (2) identify the absent witness and (3) state that he has used due diligence to obtain the witness's presence.
¶ 33. Evans offered a letter from Dr. Guild dated May 6, 1999, in which he stated:
The patient was noted to be very blunted in his affect, quite rambling and sometimes loose. He gave a convoluted twisted history, but did indicate at one point, that he had essentially had some type of mental problems, which was corroborated. He admitted to voices, but was somewhat vague on these, and although he knew the minimal of the court functioning, I think he represents schizophrenia, is still psychotic, and incompetent to stand trial.
The senselessness of his crime, plus the fact that he was at best we can tell, psychotic at the time, leaves me to believe he may not meet the standards required for responsibility, but I will leave this to the staff at the State Hospital. I feel that he is incompetent to stand trial and should be admitted to the State Hospital for additional evaluation and treatment.
¶ 34. There is no indication that Evans attempted to obtain a clarification of this opinion between May 6, 1999 and trial on August 7, 2000.
¶ 35. The trial court reviewed this letter and determined that its contents were not sufficiently definite to justify a continuance. The trial court noted that consistent with Dr. Guild's letter, the best people to address this issue were the doctors from Whitfield, who in fact testified.
¶ 36. A party seeking a continuance is required to show that he acted with due diligence to obtain the appearance of the absent witness. Smiley v. State, 815 So.2d 1140(¶ 13) (Miss.2002). That question was posed during argument to Evans' counsel who stated that he timely requested *479 a subpoena for Dr. Guild, but only found out a few days prior to trial that Dr. Guild was out of the country.
¶ 37. This Court has carefully reviewed the clerk's docket entries in this case and finds among those entries no indication that Evans acted with due diligence to obtain the presence of Dr. Guild.[3]
¶ 38. Because this Court believes that Evans failed to (1) establish due diligence in his effort to obtain the testimony of Dr. Guild and (2) establish that Dr. Guild's testimony was material, we find no abuse of discretion in the denial of a continuance.

VI.
Did the lower court err in failing to grant defendant's motion for new trial; and additionally in failing to grant defendant's motion for mistrial near the conclusion of the trial?
¶ 39. Evans contends that the trial court erred in failing to grant his motion for a new trial and his motion for a mistrial. Evans maintains that because of material errors and abuses of the court's discretion along the way, "as well as improper evidence submitted to the jury, including the testimony of two non-disclosed witnesses; the tainted confession of the defendant which should not have been admitted, the failure to give a manslaughter instruction, and the failure of the jury to find in accord with the overwhelming weight of the evidence, that a fair trial did not result," a new trial should be granted.
Matters regarding the weight and credibility of the evidence are to be resolved by the jury....Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes [Uniform Circuit and County Court Rule 10.05]. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion....
Lockridge v. State, 768 So.2d 331 (¶ 17) (Miss.Ct.App.2000) (citations omitted). The abuse of discretion standard applies for determining the propriety of granting a mistrial as well. Pearson v. State, 790 So.2d 879(¶ 6) (Miss.Ct.App.2001).
¶ 40. In reviewing this matter, we find that the trial judge did not abuse his discretion in denying these motions.
*480 ¶ 41. THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NEWTON COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Uniform Rules of Circuit and County Court Practice 9.04(I) provides: If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.

If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
The court shall follow the same procedure for violation of discovery by the defense.
Discovery material shall not be filed with the clerk unless authorized by the court.
Willful violation by an attorney of an applicable discovery rule or an order issued pursuant thereto may subject the attorney to appropriate sanctions by the court.
[2] Jury Instruction D-18: The Court instructs you the jury that if you find from the evidence in this cause beyond a reasonable doubt that:

1) On or about December 31, 1998;
2) In Newton County, Mississippi;
3) Warren Evans wilfully killed Rita Arlena Fielder;
4) Without malice; or
5) By the use of a dangerous weapon; and
6) without the authority of law and not in necessary self-defense; and
7) That at said time and place Warren Evans had the mental capacity to know right from wrong; then you may find the defendant guilty of manslaughter.
However, if the State has failed to provide any one or more of the above listed elements beyond a reasonable doubt, then it is your sworn duty to return a verdict either of "Not Guilty" or of "Not Guilty by Reason of Insanity," as you find justified from the evidence.
[3] Docket Entries from 7/22/99 - 8/9/00:

07/22/99 Defendent's [sic] objections to order for mental evaluation and treatment and motion to amend or modify same
07/22/99 Notice of Hearing on Motion
07/29/99 Motion for Continuance Due to Defendant's Inability to Stand Trial
07/29/99 Notice of Hearing on Motion
08/24/99 Order Setting Show Cause Hearing
08/27/99 Subpoena Issued for Witness on Dr. C. Gerald O'Brien, Dr. William Owen, Dr. Donald Doran, Dr. Donald C. Guild, Harvey Curry, Mrs. Dale Stamply, Dr. Steven T. Hayne, Sharon Hudnall, Robin Hudnall, Antonio Taylor, Hattie Hudnall, Robert Hardy, Horace Watts, Bill Trubitt, Don Collins, Sammy Stevens, Mike French, Larry Payne, Wayne Oliver, Edgar Poole, Myrtis Fielder, Curtis Fielder, Larry Thomas, Michael Thomas, J.R. Blackburn, Sheila Anderson, Etta Robinson, Jackie Knight, Melvin Evans, Dale Craft, J.C. Washington, Vera Evans, Zoie Hardy
09/03/99 Defendant's Compliance Reserving All Objections with Directives of "Order For Mental Evaluation and Treatment"
09/08/99 Amended Order for Mental Care and Physical Care
12/03/99 Order of Continuance
03/29/00 Judgment Directing Release of medical & Forensic Records to Defense Counsel
07/10/00 Order Presetting Criminal Case
07/11/00 Motion for Special Venire
07/31/00 Order Granting Special Venire
08/09/00 Jury Instructions
08/09/00 Jury Verdict