¶ 1. Gerome Moore was tried on charges of aggravated assault and armed robbery in the Madison County Circuit Court. He was acquitted of the aggravated assault charge but convicted of armed robbery, and sentenced to serve thirty-five years' confinement. Moore appeals asserting: (1) his initial statement was taken in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, (2) the circuit court erred in admitting prejudicial evidence consisting of photographs, as well as allowing testimony concerning Moore's statement that was not supported by the statement, and (3) the verdict was against the overwhelming weight of the evidence.
 FACTS
¶ 2. On the early morning of August 29, 2000, Joyce Fletcher was arriving home from work. She was unaware that three men were following her in a stolen Buick Roadmaster. As she drove into her driveway, the stolen Buick also drove into the driveway, blocking any escape. One man pulled her car door open and ordered her at gunpoint to get out of her car. She refused. The man with the handgun hit her in the mouth with the gun. Another man reached into her car, and took her purse. As he reached inside the car, Fletcher pulled off the hat the man was wearing. The men then went back to the Buick, but one then returned and shot Fletcher in the abdomen as she still sat in her car with her seatbelt fastened. Despite severe blood loss, Fletcher was able to crawl inside her home and telephone for help.
¶ 3. The stolen Buick was located by the Jackson Police Department, and Bobby Sanders was found sleeping inside of it. Both the vehicle and Sanders were taken into custody. Lieutenant Randy Tyler of the Ridgeland Police Department interviewed Sanders' mother and sister, and from them obtained information leading to the arrest of Moore.
¶ 4. Sanders and the third man, Elias Gunn, ultimately pled guilty to armed robbery. At trial, Sanders denied that he was even present at the scene of the crime. Gunn gave a pre-trial statement to the effect that Moore was driving the stolen Buick when Sanders saw Fletcher, and Sanders instructed Moore to follow her. Moore did so. When Fletcher parked her vehicle, Gunn and Sanders exited the stolen Buick, and Sanders held a gun to the woman and demanded she get out of her car. She refused, so Sanders shot her. At some point, Gunn put his head inside Fletcher's vehicle, because he said she "snatched my hat off my head." Gunn stated that Moore did not get out of the stolen vehicle during the robbery. He also stated that there had been no agreed upon plan to rob Fletcher. Gunn's testimony at trial conformed to this version of events.
 DISCUSSION 1. WAIVER OF RIGHT TO REMAIN SILENT
¶ 5. Moore gave two statements prior to his appointment of counsel. He argues that he did not give his consent to a waiver of his right to remain silent, and even if he did give consent, the waiver of his right to remain silent was unknowing due to his limited intelligence and emotional state. In the first statement, which was not recorded, Tyler testified that Moore admitted to being part of a common plan to rob someone to obtain money to purchase marijuana. In a second statement, which was recorded, Moore admitted that he was a passenger in the stolen vehicle, but claimed that Sanders committed the robbery and shooting without Moore acquiescing *Page 193 
to participate or having any knowledge of Sanders' plans.
¶ 6. Although it is not germane to this assignment of error, Moore later wrote a letter to an assistant district attorney in which he admitted to being the driver of the stolen Buick, but he still maintained that Sanders shot the victim, and there was no agreement to commit robbery. Moore also contended that he did not get out of the stolen Buick during the commission of the crime. Moore's testimony was consistent with this third version of events. He stated that Sanders had mentioned "hitting a lick" on someone to obtain money to buy marijuana, but that this phrase indicated that Sanders was not serious about robbing someone. He admitted to driving the stolen Buick, and at Sanders' instruction, parking it to block the victim's car from backing out of the driveway. He denied that there was a common plan to rob Fletcher.
¶ 7. The record shows that while Moore filed a pre-trial motion to suppress the two statements, he failed to obtain a ruling by the circuit court. The failure to obtain a ruling on a pre-trial motion, or to raise a contemporaneous objection during trial to the evidence sought to be excluded, operates as a waiver to the merits. Rushing v. State,711 So.2d 450 (¶ 17) (Miss. 1998).
¶ 8. Even assuming this issue was not waived, which we do not, it would be without merit. Moore contends that his lack of education and intelligence, coupled with the facts that he was under the influence of marijuana and emotionally distraught over the recent death of a relative, rendered his consent unknowing. On appeal he argues that there is insufficient evidence to show a knowing and intelligent waiver of his right to refuse questioning under the Fifth and Fourteenth Amendments to the United States Constitution.[1] In determining whether a waiver is knowing and intelligent, trial courts are directed to look just not to impaired mental abilities of defendants, but rather to the "totality of the circumstances," and the trial court's determination is given deference. White v. State, 495 So.2d 1346, 1347 (Miss. 1986).
¶ 9. The record shows without doubt that Moore was thoroughly advised of his rights prior to the taking of the second statement. Moore was asked both whether he understood that he was being questioned concerning the crime in question and whether he knew he had a right to remain silent. He answered both questions by saying "I think so." However, he was asked a second time whether he understood he could remain silent, and answered, "Yes sir." And, he was asked yet again whether "you'd like to make a statement at this time?" He answered, "Yes sir."
¶ 10. The first statement was not recorded, so there is no written waiver of rights. However, Moore's testimony on cross — examination concerning the first statement shows that Moore understood his legal peril only too well. He knew that he could be identified as being the man who had driven the stolen Buick and parked it in such a way as to prevent Fletcher from fleeing. He gave his statements to attempt to distance himself from the crime.
 Q: And you knew that you were being questioned in regard to an armed robbery, right?
 A: I mean, you know. *Page 194 
 Q: And aggravated assault. I mean he told you what he was asking you about, didn't he?
 A: About once or twice and then he would just keep on saying it, you know what I mean.
 Q: Well, when a police officer has you in there — and before he questioned you, he said you have the right to remain silent. He gave you all the Miranda rights, didn't he?"
 A: Why should I remain silent?
 Q: Sir, my question to you is before you were asked any of these questions, you were given your Miranda rights, correct?
 A: Yes, Sir.
 Q: And you knew that you were in custody being charged with a crime, correct?
 A: True, Sir.
 Q: So you knew this was an important statement to give?
 A: No, I didn't have to give him nothing.
 Q: So you didn't think it was that important what you told the detective regarding an armed robbery and aggravated assault?
 A: I didn't have to give them no statements, sir.
 Q: I know you didn't have to? You chose to?
 A. It wasn't a choice. I did it on my own will to let them know what went on that night.
¶ 11. The record shows that Moore gave his statements to attempt to construct a version of events that would conform his actions to events on the night of the crime without creating legal liability for himself. As he stated in the second statement, "I know if I go to jail, I'll be a eyewitness to this. I know I can get out of jail if I only be a eyewitness, you know what I'm saying." The burden of proof on the State when a defendant asserts that his waiver was unknowing is beyond a reasonable doubt. Evans v. State, 844 So.2d 470 (¶ 21) (Miss.Ct.App. 2002). In this case, Moore failed to secure a ruling on whether the State met this burden of proof, which waived any merit the issue might have had. Nevertheless, even if the issue had been preserved, the record does not support Moore's contention that he lacked the mental capacity to understand the voluntary nature of his statement, as well as comprehend the gravity and importance of his admissions. There was no error going to the admissibility of Moore's statements.
 2. PREJUDICIAL PHOTOGRAPHS AND TESTIMONY NOT SUPPORTED BY MOORE'S STATEMENT
¶ 12. Two photographs of the interior of Fletcher's vehicle were admitted into evidence over Moore's objection. On appeal, he contends the photographs were unduly prejudicial. This Court will only reverse the trial court's evidentiary ruling for an abuse of discretion. Alexanderv. State, 610 So.2d 320, 338 (Miss. 1992). Regarding photographs, "the discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." Brown v. State, 682 So.2d 340, 353 (Miss. 1996) (quotingHart v. State, 637 So.2d 1329, 1335 (Miss. 1994)).
¶ 13. In this case, Fletcher testified as to how she came to be shot and the difficulty she had in "crawling" from her vehicle to the inside of her home where she telephoned for assistance. She also testified to her extensive blood loss, the resulting surgery and residual effects of her wound and surgery. While Moore made a *Page 195 
timely objection based on the prejudicial nature of the photographs, the circuit court found that the photographs' evidentiary nature made them admissible. The record shows that the circuit court correctly analyzed this issue. Nothing in the record supports disturbing the circuit court's determination. There is no merit to this issue.
¶ 14. Moore additionally asserts that it was improper to allow Tyler to testify that in his first statement, which was not recorded, Moore stated that he and the other two men in the stolen Buick planned "to hit a lick" on someone to obtain money to purchase marijuana. Moore failed to make a contemporaneous objection to this testimony. Failure to make a timely objection to testimony waives any issue going to the admissibility of the testimony. Ward v. State, 821 So.2d 894 (¶ 17) (Miss.Ct.App. 2002). Even assuming, which we do not, that this issue was not waived, it would be meritless. Moore's contention that the phrase should not have been admitted is based upon the fact that Tyler's notes of the first statement did not indicate that Moore used the phrase "to hit a lick." However, even if Tyler had been directed by the circuit court to not use that exact phrase, he still would have been a competent witness to testify to the substance of Moore's first statement. Furthermore, Moore himself used the phrase "to hit a lick" in his direct testimony. He stated the phrase meant that Sanders was only "joking" about planning to rob someone. Thus, even if the issue was not waived, and even if the circuit court should have excluded the testimony had Moore raised an objection, the admission of Tyler's use of the phrase would not amount to reversible error. There is no merit to this assignment of error.
 3. WEIGHT AND SUFFICIENCY OF THE EVIDENCE
¶ 15. Sanders pled guilty to shooting Fletcher. At trial, he denied actually having shot Fletcher, but Moore's and Gunn's statements and testimony identified Sanders as the person who actually shot Fletcher. None of the three men admitted that there was a common scheme involved in the robbery. Moore contends that there was insufficient evidence to find that he was an accomplice to the crime.
¶ 16. A motion for JNOV challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). A reviewing court must consider as true all credible evidence consistent with the defendant's guilt, and the State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. This Court may only reverse where, with respect to one or more of the elements of the offense, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 808 (Miss. 1987). Similarly, a motion for a new trial challenges the weight of the evidence, and implicates the discretion of the trial court. McClain, 625 So.2d at 781. The trial court should only grant a new trial motion when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Wetz, 503 So.2d at 812.
¶ 17. Fletcher testified that all three men exited the Buick, and all three men participated in robbing her. This testimony contradicted Moore's and Gunn's testimony that there was no common participation in the theft, and in and of itself, Fletcher's testimony would sustain the verdict. Yet, in addition to Fletcher's testimony, Moore's initial unrecorded statement *Page 196 
was an admission of guilt. Moreover, he twice changed his story. He made the second voluntary statement, in which he said he was merely a passenger in the stolen Buick. Then, he wrote the letter to the assistant district attorney in which he admitted to being the driver of the stolen vehicle. At trial, he attempted to explain this inconsistency. He testified that, while he had been the driver, Sanders instructed him to follow Fletcher to her home and park the vehicle to block Fletcher from being able to flee. Moore stated that he had been in fear that Sanders would harm him, if he did not do as he was told. However, Gunn testified that Sanders did not threaten anyone. This testimony presented the jury with a determination of credibility. The circuit court correctly denied the motions for a JNOV and a new trial. There is no merit to this assignment of error.
¶ 18. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTIONOF ARMED ROBBERY AND SENTENCE OF THIRTY-FIVE YEARS IN THE CUSTODY OFMISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THISAPPEAL ARE ASSESSED TO MADISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE,IRVING, MYERS AND GRIFFIS, JJ., CONCUR.
[1] Despite the general assertion of rights under the Sixth Amendment to the United States Constitution, Moore does not make any substantive claim that his right to counsel was abridged, or that statements were taken after the appointment of counsel.